UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA,                              :
:
         *Plaintiff*,                 :  **ECF CASE**
:
  v.                                                          :
:
ANY AND ALL RADIO STATION                              :
TRANSMISSION EQUIPMENT, RADIO      :  14 Civ. 988 (RA)
FREQUENCY POWER AMPLIFIERS,                            :
RADIO FREQUENCY TEST                                   :
EQUIPMENT AND ANY OTHER                                :
EQUIPMENT ASSOCIATED WITH OR       :
USED IN CONNECTION WITH THE                            :
RADIO TRANSMISSIONS ON THE                             :
FREQUENCIES OF 94.5 MHZ AND        :
94.9 MHZ LOCATED IN APARTMENT      :
32N AT 1370 SAINT NICHOLAS                             :
AVENUE, NEW YORK, NEW YORK         :
10033, AND PREMISES LOCATED AT     :
80-84 WEST 181 STREET, BRONX,                          :
NEW YORK 10453,                                        :
:
         *Defendants-In-Rem*.   :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF UNITED STATES OF
AMERICA'S MOTION FOR SUMMARY JUDGMENT**


                                                                       PREET BHARARA
                                                                         United States Attorney
                                                                         Southern District of New York
                                                                         Assistant United States Attorney
                                                                         86 Chambers Street, Third Floor
                                                                         New York, New York 10007


    Arastu K. Chaudhury
Assistant United States Attorney
      Of Counsel

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

    A.  INDENTIFYING THE LOCATION OF THE RADIO SIGNALS ....................................2

    B.  CONFIRMING THE EXISTENCE OF THE RADIO STATION STUDIO .....................4

    C.  IDENTIFYING THE OWNERS OF THE RADIO STATIONS ........................................5

    D.  FILING OF COMPLAINT, OBTAINING AND EXECUTING THE
        WARRANT ......................................................................................................................6

ARGUMENT ................................................................................................................................8

I.     The Applicable Legal Framework......................................................................................  9

II.    The Items at 1370 St. Nicholas Avenue and 80 West 181st Street Are Subject to
       Forfeiture .............................................................................................................................11

III.   Pro Se Claimant Ariel Sanchez Has No Meritorious Defense to Forfeiture .......................13

CONCLUSION............................................................................................................................15

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Allen v. Cuomo*,
  100 F.3d 253 (2d Cir. 1996)..................................................................................9

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................................8, 9

*Burgos v. Hopkins*,
  14 F.3d 787 (2d Cir. 1994)..................................................................................9

*Carey v. Crescenzi*,
  923 F.2d 18 (2d Cir. 1991)..................................................................................9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..................................................................................8

*Jacob v. NYSARC, Inc.*,
  No. 13 Civ. 1677 (KPF), 2014 WL 6750654 (S.D.N.Y. Dec. 1, 2014)..................9

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)..................................................................................8

*Matthews v. Eldridge*,
  424 U.S. 319 (1976)..................................................................................14

*McPherson v. Coombe*,
  174 F.3d 276 (2d Cir. 1999)..................................................................................9

*Nebraska v. Wyoming*,
  507 U.S. 584 (1993)..................................................................................8

*Scotto v. Almenas*,
  143 F.3d 105 (2d Cir. 1998)..................................................................................8

*Stinson v. Sheriff's Department*,
  499 F. Supp. 259 (S.D.N.Y. 1980)..................................................................................9

*United States v. Any and All Radio, Station Transmission Equipment etc.
Located at 1083 E. 165th Street, Bronx*, N.Y.,
  No. 00 Civ. 893 (GBD), 2004 WL 2848532, (S.D.N.Y. Dec. 9, 2004).....10, 11, 14, 15

*United States v. Any and All Radio Equipment Located at 1400 Laurel Avenue,
Minneapolis, MN*, 976 F. Supp. 1255 (D. Minn. 1997), *rev'd on other grounds*, 207
    F.3d 458 (8th Cir. 2000) ....................................................................................................14

*United States v. Any and All Radio Station Transmission Equipment, etc.,
Located at 2151 Jerome Avenue*,
    93 F. Supp. 2d 414 (S.D.N.Y. 2000).........................................................................11, 14

*United States v. Any and All Radio Station Transmission Equipment, etc.,
Located at 9613 Madison Avenue*,
     218 F.3d 543 (6th Cir. 2000)....................................................................................11, 14

*United States v. Davis*,
    648 F.3d 84 (2d Cir. 2011)...............................................................................................11

*United States v. Mondragon*,
    313 F.3d 862 (4th Cir. 2002) ...........................................................................................10

**FEDERAL STATUTES**

    47 C.F.R. § 15.1..................................................................................................................9

    18 U.S.C. § 981................................................................................................................11

    19 U.S.C. § 1600..............................................................................................................10

    47 U.S.C. § 301..................................................................................................................9

    47 U.S.C. § 510..........................................................................................9, 10, 11, 12, 13

    Fed. R. Civ. P. 56.1 ............................................................................................................2

    Fed. R. Civ. P. 56...............................................................................................................8

Plaintiff United States of America (the "Government"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, dismissing the claims filed by plaintiff *pro se* Ariel Sanchez seeking the return of items lawfully seized by the Government.

## PRELIMINARY STATEMENT

This matter involves certain electronic devices that were seized by agents of the Federal Communications Commission ("FCC") and the U.S. Marshal Service on April 2, 2014, pursuant to a warrant for the arrest of articles *in rem*. The *pro se* claimant, Mr. Ariel Sanchez, has filed a claim seeking the return of seven of the 24 items seized by the FCC from the premises at which the warrant was executed. All of the items at issue here are subject to forfeiture because they were used in connection with a violation of, or possessed with the intent to violate, the Communications Act of 1934 by illegally transmitting radio programming without a license. The Government is therefore entitled to summary judgment.

Mr. Sanchez asserts that he is entitled to have certain items returned to him because those items not in use at the time the warrant was executed, and because claimant was not given any prior warning before the items were seized. The claimant's defenses to forfeiture are without merit. That the seized items were not in operation at the time the warrant was executed is of no moment, as the relevant statute permits seizure of any electronic device possessed with the intent to knowingly and willfully transmit radio programming without a license, and the Government can amply make that showing here. Further, it is well established that the pre-seizure warrant process combined with the post-seizure forfeiture process provides all the process that is due. As such, the Court should grant the Government's motion.

**STATEMENT OF FACTS**

On December 1, 2011, the New York Office of the FCC received a complaint concerning possible unlicensed radio stations operating in the New York City area on 94.5 MHz and 94.9 MHz.  *See* Exh. 1.  That complaint reported that the studio for the unlicensed radio stations was located at 80 W. 181st Street in Bronx, New York, but the equipment transmitting the signals for those stations was located in another building in New York City.  Pl.'s Statement of Undisputed Facts Pursuant to Fed. R. Civ. P. 56.1 ("Pl.'s 56.1 Statement") ¶ 1; Decl. of Luis Roman ("Roman Decl.") ¶ 5.

A.  **INDENTIFYING THE LOCATION OF THE RADIO SIGNALS**

On March 5, 2012, FCC agents conducted an investigation and determined that the signals on 94.5 MHz and 94.9 MHz were emanating from either a building at 1370 Saint Nicholas Avenue in New York, New York 10033, or the adjacent building at 260 Audubon Avenue.  The FCC database showed no license issued for an FM radio station on 94.5 MHz or 94.9 MHz at either 1370 Saint Nicholas Avenue or 260 Audubon Avenue.  That same day, the FCC agents also determined that the signals emanating from that source exceeded the signal strength allowed under the FCC's rules for non-licensed transmitters by 8,811 times the legal limit for 94.5 MHz and 9,130 times the legal limit for 94.9 MHz.  Pl.'s 56.1 Statement ¶ 2; Roman Decl. ¶ 6.

On June 18, 2012, FCC agents positively identified the source of the signals on 94.5 MHz and 94.9 MHz as 1370 Saint Nicholas Avenue.  With the assistance of the building manager, the FCC agents were able to observe the antennas associated with the unlicensed stations on 94.5 MHz and 94.9 MHz in blue plastic crates on the balcony of Apartment # 32N at 1370 Saint Nicholas Avenue, and confirmed that the signals on 94.5 MHz and 94.9 MHz were emanating

from those antennas. The FCC agents knocked on the door of Apartment # 32N, but no one answered. They took field strength measurements and determined that the signal strength exceeded the legal limit by 8,556 times the legal limit for 94.5 MHz and 8,967 times the legal limit for 94.9 MHz. The FCC agents then posted a Notice of Unlicensed Radio Operation on the door of Apartment # 32N, warning that operation of unlicensed broadcast stations violates federal law and outlining the potential penalties for such a violation. Pl.'s 56.1 Statement ¶ 3; Roman Decl. ¶ 7.

On February 2, 2013, FCC agents returned to 1370 Saint Nicholas Avenue and observed that the antennas were still located in blue crates on the balcony of Apartment # 32N, and that both the stations continued operations. The FCC agents determined that signals emanating from the antennas exceeded the legal limit by 8,859 times the legal limit for 94.5 MHz and 8,911 times the legal limit for 94.9 MHz. Pl.'s 56.1 Statement ¶ 4; Roman Decl. ¶ 8.

On May 3, 2013, an FCC agent returned to 1370 Saint Nicholas Avenue and found that the stations on 94.5 MHz and 94.9 MHz were still transmitting. The FCC agent again determined that the signals emanating from the antennas exceed the legal limit, this time by 2,846 times the legal limit for 94.5 MHz and 5,168 times the legal limit for 94.9 MHz. Pl.'s 56.1 Statement ¶ 5; Roman Decl. ¶ 9.

That same day, the FCC agent noted that the station operating on 94.5 MHz was identified as RIKA FM and the station operating on 94.9 MHz was identified as ACTIVA FM. The programming heard on the station operating on 94.5 MHz could also be heard on the Internet at www.rikafm.com, with an approximate 30-second delay between the programming heard on the Internet and the over-the-air transmissions heard on 94.5 MHz. The programming

heard on the station operating on 94.9 MHz could not be heard on the Internet. Pl.'s 56.1 Statement ¶ 6; Roman Decl. ¶ 10.

On December 2, 2013, FCC agents returned to 1370 Saint Nicholas Avenue and found that the stations on 94.5 MHz and 94.9 MHz were still operating. Agents took field strength measurements of both stations, which showed that the signals emanating from the antennas exceeded that allowed for non-licensed transmitters by 7,549 times the legal limit for 94.5 MHz and 6,605 times the legal limit for 94.9 MHz. Pl.'s 56.1 Statement ¶ 7; Roman Decl. ¶ 11.

### B. CONFIRMING THE EXISTENCE OF THE RADIO STATION STUDIO

On February 29, 2012, FCC agents went to 80 W. 181st Street, Bronx, New York, and found that the building was closed. The FCC agents observed a sign on the front door of the building that read, "RIKA MEDIA GROUP, LLC INFO: 347-603-0229 80 W 181 ST BRONX, NY 10453." An employee from the tire shop located next to the RIKA Media Group, LLC office stated that the individuals associated with RIKA Media Group only worked late in the afternoon and at night and that there was a music recording studio inside the building. Pl.'s 56.1 Statement ¶ 8; Roman Decl. ¶ 12.

On June 26, 2012, FCC agents again went to 80 W. 181st Street and found the building closed. The agents spoke to a female mail carrier who reported that, in the past, she delivered the mail inside the building and observed a music recording studio. More recently, the building had been closed during her working hours and she was told to drop the mail next door at the tire shop. Pl.'s 56.1 Statement ¶ 9; Roman Decl. ¶ 13.

On February 28, 2013, FCC agents returned to the studio at 80 W. 181st Street. The agents monitored 94.5 MHz and 94.9 MHz and heard transmissions commence at approximately 5:00 p.m. Minutes before the transmissions started, the agents observed about eight people enter

the studio. FCC agents observed that the RIKA Media Group had expanded into the space formerly occupied by the tire store. There was also a store adjacent to RIKA Media Group called "Infinit Sound," which sold audio equipment, cell phones and electronics. Three phone numbers were listed on the sign posted on the front of the building: 646-377-0958, 347-372-9365, and 347-603-0229, the last of which was the telephone number listed on the RIKA Media Group sign that agents observed posted on the door on February 29, 2013. Pl.'s 56.1 Statement ¶ 10; Roman Decl. ¶ 14.

On February 5, 2014, FCC agents returned to 80 W. 181st Street, and observed that Infinit Sound encompassed 80-84 W. 181st Street, and the sign still listed one of the primary contact numbers as 347-603-0229, which is associated with the RIKA Media Group. Pl.'s 56.1 Statement ¶ 11; Roman Decl. ¶ 15.

### C. IDENTIFYING THE OWNERS OF THE RADIO STATIONS

In 2012, the FCC reviewed YouTube video footage related to the illegal radio station RIKA FM. Those videos contained footage of a radio studio with signs that read "RIKA FM 718-305-4154 RikaFM.com." Pl.'s 56.1 Statement ¶ 12; Roman Decl. ¶ 16.

On November 6, 2012, the FCC issued a subpoena to Vonage Corporation, the service provider for telephone number 718-305-4154. Pl.'s 56.1 Statement ¶ 13; Roman Decl. ¶ 18. On December 7, 2012, Vonage Corporation responded to the subpoena and provided documentation indicating that the subscriber for telephone number 718-305-4154 is Ariel Sánchez. Pl.'s 56.1 Statement ¶ 14; Roman Decl. ¶ 19.

On March 4, 2013, an FCC agent spoke to the original complainant, who identified Ariel Sánchez as the owner of 94.5 MHz (RIKA) and 94.9 MHz (ACTIVA), which have studios in 80 W 181st Street Bronx, NY. Pl.'s 56.1 Statement ¶ 14; Roman Decl. ¶ 19.

5

On March 2, 2013, Michael Celenza, President of Apple Community Broadcasting, Inc., the licensee of Translator Station W268AN in Plainview, New York, filed a complaint with the New York Office of the FCC, reporting interference from an unlicensed station broadcasting on 94.9 MHz.  Mr. Celenza reported that an unlicensed station on 94.9 MHz was causing interference with Apple's reception of Translator Station W235BB, which transmits on 94.9 MHz, and is the Translator Station from which Apple receives programming "off-air" for rebroadcasting on Translator Station W268AN.  Pl.'s 56.1 Statement ¶ 15; Roman Decl. ¶ 20.

On March 25, 2013, Mr. Celenza again contacted the FCC regarding the interference on 94.9 MHz.  Mr. Celenza reported that he had called a telephone number (718-502-9987) broadcast on 94.9 MHz as part of an on-air contest, and spoke with a person, who stated that he "leases this frequency from another guy" and that "all he does is send his audio via an IP address and the transmitter guy receives it and puts it on air from transmitter location."  Exhibit 15.  Mr. Celenza was then provided with another number to call (347-603-0229).  Mr. Celenza reported that when he called the second telephone number, the voicemail recording stated that he had reached Ariel Sánchez.  Mr. Celenza reported that he subsequently spoke to Ariel Sánchez twice, and each time Mr. Sánchez agreed to shut down the station.  Pl.'s 56.1 Statement ¶ 16; Roman Decl. ¶ 21.

D. FILING OF COMPLAINT, OBTAINING AND EXECUTING THE WARRANT

On February 11, 2014, the Government filed under seal the Verified Complaint initiating this action.  Pl.'s 56.1 Statement ¶ 17; Roman Decl. ¶ 22.

Shortly thereafter, the Government obtained a Summons and Warrant for Arrest of Items In Rem (the "Warrant") and a Writ of Assistance, which were to be executed in order to seize

6

those items that were used in connection with violations of federal law. Pl.'s 56.1 Statement ¶ 18; Roman Decl. ¶ 23.

On April 2, 2014, the FCC in conjunction with the U.S. Marshal's service executed the Warrant, seizing items located at 1370 St. Nicholas Avenue Apt. 32N in Manhattan, New York, and at 80-84 West 181 Street in Bronx, New York. Pl.'s 56.1 Statement ¶ 19; Roman Decl. ¶ 24.

During the execution of the Warrant at 80-84 West 181st Street, Bronx, New York, the FCC confirmed the existence of a radio studio on the premises, that was being used to produce, process, and broadcast programming that was being illegally transmitted over 94.5 and/or 94.9 MHZ. Pl.'s 56.1 Statement ¶ 20; Roman Decl. ¶ 26.

The FCC seized various electronic or similar devices that were at the radio studio, and all of the items seized were electronic or similar devices that were being used or could be used in connection with the transmission of illegal radio broadcasts. Pl.'s 56.1 Statement ¶ 21; Roman Decl. ¶ 27.

Among the electronic devices seized on April 2, 2014, were the following seven items: (1) Bext XL 1000 FM Exiter, (2) Omnia FM Processor, (3) Omnirex FM 30 FM Exiter, (4) PCS Electronics 300 FM Transmitter, (5) Asus Laptop, (6) 3 Shure SM7 Microphone, and (7) Dell Desktop Computer. Pl.'s 56.1 Statement ¶ 22; Roman Decl. ¶ 28. All of these items are electronic devices that are used to produce, process, or transmit radio programming through an antenna, and though they may not have been in operation at the time the Warrant was executed, all of these devices could be used in the illegal transmission of radio programming over the 94.5 or 94.9 MHZ. Pl.'s 56.1 Statement ¶ 23; Roman Decl. ¶¶ 29-31.

On or about May 27, 2014, Ariel Sanchez filed an appearance *pro se* in this matter and also filed a letter requesting the return of the seven items identified above that were seized during

the execution of the Warrant. Pl.'s 56.1 Statement ¶ 21; Decl. of Arastu K. Chaudhury in support of Plaintiff United States' Motion for Summary Judgment ("Chaudhury Decl.") Exhs. 1-2.

## ARGUMENT

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must give weight to "[t]he evidence of the nonmovant" and draw "all justifiable inferences" in favor of the nonmoving party when determining whether a dispute of material fact exists. *Id.* at 255.

If the moving party shows that no genuine issue as to any material fact exists, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (additional citation omitted) (quoting Fed. R. Civ. P. 56(a)). The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" to satisfy its burden. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citations omitted). Rather, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

If "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (alteration in original) (internal quotation marks omitted). Thus, "[a]

defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

In a *pro se* case, courts construe the *pro se* litigant's pleadings "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). "Nonetheless, a *pro se* litigant must still be held to the normal requirements of summary judgment, and bald assertions, unsupported by evidence, will not overcome a motion for summary judgment." *Jacob v. NYSARC, Inc.*, No. 13 Civ. 1677 (KPF), 2014 WL 6750654, at *7 (S.D.N.Y. Dec. 1, 2014) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991), and *Stinson v. Sheriff's Department*, 499 F.Supp. 259, 262 (S.D.N.Y. 1980)).

## I. The Applicable Legal Framework

The FCC regulates intrastate, interstate and foreign radio communications pursuant to the Communications Act of 1934 (the "Act"), which was enacted "to maintain the control of the United States over all the channels of radio transmission; and to provide for the use of such channels ... by persons for limited periods of time, under licenses granted by Federal authority." 47 U.S.C. § 301. Section 301 prohibits radio broadcasting without a license unless specifically exempted under the Act. *See id.*; 47 C.F.R. § 15.1.

When a broadcaster knowingly and willfully violates the licensing requirement set forth in Section 301, the Government has a variety of options, including seeking the seizure and forfeiture of equipment that is used or possessed in connection with unlicensed radio broadcasting. *See* 47 U.S.C. § 510(a). The Government may seize "[a]ny electronic . . . or

similar device, or component thereof, used . . . [or] possessed . . . with willful and knowing intent to violate section 301 or 302a of this title, or rules prescribed by the Commission under such sections," and such items are forfeited to the United States. *Id.*

When seeking forfeiture of items seized pursuant to Section 510, "the supplemental rules for certain admiralty and maritime claims by any district court of the United States having jurisdiction over the property" govern the applicable forfeiture proceedings. *Id.* § 510(b). Seizure and forfeiture are governed by the laws relating to the seizure and forfeiture of property for violation of the customs laws. *Id.* § 510(c)(1).

Either a preponderance of the evidence or a probable cause standard applies to forfeitures conducted pursuant to Section 510. Section 510 refers to the customs laws, which is understood to incorporate by reference the forfeiture provisions found at 19 U.S.C. § 1600 *et seq. See United States v. Any and All Radio, Station Transmission Equip. etc. Located at 1083 E. 165th Street, Bronx, NY*, No. 00 Civ. 893 (GBD), 2004 WL 2848532, at *3 (S.D.N.Y. Dec. 9, 2004) ("*1083 E. 165th Street*") (citing 19 U.S.C. § 1615). Those customs law provisions provide that the Government had to show probable cause to believe that the items seized were connected with a violation of federal law. *See id.*

In 2000, Congress enacted the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. No. 106-185, 114 Stat. 202, 205 (codified at 18 U.S.C. § 981 *et seq.*). CAFRA provides that when the Government seeks forfeiture pursuant to a "civil forfeiture statute," the Government must establish, "by a preponderance of the evidence, that the property is subject to forfeiture," *id.* § 983(c)(1).[1] CAFRA defines "civil forfeiture statute" to be "any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a

---

[1] Prior to CAFRA, the probable cause standard applied to all federal civil forfeiture proceedings. *See United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002).

10

criminal offense," but excludes certain specific forfeiture statutes from the definition, including "the Tariff Act of 1930 or any other provision of law codified in title 19," *i.e.*, the customs laws. 18 U.S.C. § 981(i); *see also United States v. Davis*, 648 F.3d 84, 94 (2d Cir. 2011) (referring to this exclusion as the "customs carve-out"). Although the FCC seizure statute is not excluded from CAFRA's definition of "civil forfeiture statute," the FCC seizure provision incorporates by reference the customs laws carved out of CAFRA. See 47 U.S.C. § 510(c). Arguably, a probable cause rather than a preponderance standard applies to forfeitures conducted pursuant to the FCC seizure provision.

Ultimately, the Court need not reach the question of which burden of proof is appropriate here because the evidence that Government relies on here satisfies the higher burden of proof required by CAFRA.

If the Government meets its burden to show that the property seized is subject to forfeiture, the burden shifts to the claimant to prove by a preponderance of the evidence that some defense to forfeiture exists. *See 1083 E. 165th Street*, 2004 WL 2848532, at *3; *United States v. Any and All Radio Station Transmission Equipment, etc., Located at 9613 Madison Avenue*, 218 F.3d 543, 548 (6th Cir. 2000) ("*9613 Madison Avenue*"); *United States v. Any and All Radio Station Transmission Equipment, etc., Located at 2151 Jerome Avenue*, 93 F. Supp. 2d 414, 417-18 (S.D.N.Y. 2000) ("*2151 Jerome Avenue*"). "Absent such a showing, the government is entitled to a judgment of forfeiture." *1083 E. 165th Street*, 2004 WL 2848532, at *3.

## II. The Items at 1370 St. Nicholas Avenue and 80 West 181st Street Are Subject to Forfeiture

Here, the Government can show by a preponderance of the evidence that the seized items are subject to forfeiture. Mr. Sanchez identifies seven items that he contends should be returned:

(1) Bext XL 1000 FM Exiter, (2) Omnia FM Processor, (3) Omnirex FM 30 FM Exiter, (4) PCS Electronics 300 FM Transmitter, (5) Asus Laptop, (6) 3 Shure SM7 Microphone, and (7) Dell Desktop Computer (Camera PC).  Pl.'s 56.1 Statement ¶ 22; Chaudhury Decl. Exh. 2. The seven items that are at issue in this motion were all "electronic . . . or similar device[s]," and thus, fall within the ambit of the statute.  47 U.S.C. § 510(a); *see also* Pl.'s 56.1 Statement ¶¶ 22-23; Roman Decl. ¶¶ 28-31.

Further, the Government can show that the seven items at issue were "used [or] possessed . . . with willful and knowing intent to violate section 301" of the Act.  47 U.S.C. § 510(a).  FCC Agents determined on at least five occasions that the transmitters at 1370 St. Nicholas Avenue Apt. 32N were operating in violation of federal law.  Pl.'s 56.1 Statement ¶¶ 2-7; Roman Decl. ¶¶ 6-11.  The complainant identified the radio studio in the Bronx as the broadcast production facility associated with the unlicensed broadcasts over the 94.5 MHZ frequency both by a complainant, and FCC agents confirmed this through direct observation.  Pl.'s 56.1 Statement ¶¶ 1, 8-11; Roman Decl. ¶¶ 5, 12-16, 26.  FCC Agents posted a FCC Notice of Unlicensed Radio Operation on the door of Apartment 32N at 1370 St. Nicholas Avenue, warning that operation of unlicensed broadcast stations violates federal law and outlining the potential penalties for such a violation.  Pl.'s 56.1 Statement ¶ 3; Roman Decl. ¶ 7, Exh. B.  This notice was placed at the same apartment that Mr. Sanchez, in his *pro se* appearance form claims is his address in New York.  Chaudhury Decl. Exh. 1.  Additionally, the representative of a licensed station had repeatedly been in touch with Mr. Sanchez in an attempt to persuade him to cease interfering with licensed stations broadcasts.  Pl.'s 56.1 Statement ¶¶ 15-16; Roman Decl. ¶¶ 19-20.

There is no evidence that Mr. Sanchez had a license or reasonably believed he had a license, or obtained the advice of an attorney concerning the legality of the radio broadcasts.

Indeed, Mr. Sanchez does not seek the return of property that was in use at the time the Warrant was executed, thus apparently conceding that his unlicensed broadcasts were in violation of federal law. *See* Chaudhury Decl. Exh. 2. As such, the Government has amply satisfied its burden to establish by a preponderance of the evidence that the items seized are subject to forfeiture.

### III.     Pro Se Claimant Ariel Sanchez Has No Meritorious Defense to Forfeiture

The Government having established the property was subject to seizure, the burden now shifts to Mr. Sanchez to establish that there is some defense to the forfeiture. Mr. Sanchez admits that the seven items he seeks to have returned were taken from either 1370 St. Nicholas Avenue Apt. 32N or 80 West 181st Street, but asserts that he is entitled to the return of these items because (1) certain items identified by Sanchez "were not in use when seized," (2) "No FCC Warning letter was issue[d] to me;" and (3) "No FCC Warning Notice was issue[d] to 80 W 181st [Street] Bronx NYC." Chaudhury Decl. Exh. 2.

Based on the foregoing assertions, one could ascribe to Mr. Sanchez two distinct legal arguments. First, the Government did not have the authority to seize the items that were not in use at the time the Warrant was executed. Second, the Government violated Mr. Sanchez's due process rights by not providing him with a warning prior to executing the Warrant. Neither of these arguments has merit.

First, that the seven items at issue were not in use at the time they were seized is of no moment. The plain language of the statute provides that "[a]ny electronic . . . or similar device" may be seized and forfeited to the United States even if it is not in operation or use at the time the item is seized, so long as the item is "possessed" with intent to violate the statute. *Id.* As discussed above, the Government has sufficiently established the requisite intent. *Supra* at 12-

13

13.  Mr. Sanchez was well aware that he was illegally broadcasting programming without a license, and indeed, Mr. Sanchez does not contest that he intended to violate and was in fact violating the Act.  Pl.'s 56.1 Statement ¶¶ 3, 15-16; Roman Decl. ¶¶ 7, 19-20; Chaudhury Decl. Exh. 2.  Thus, this asserted defense to forfeiture must fail.

Second, Mr. Sanchez asserts that FCC did not provide a warning to him or at 80 W. 181st Street.  Courts have repeatedly held that the pre-seizure warrant process combined with the post-seizure forfeiture process provide claimants with sufficient due process protections.  *See United States v. Any and All Radio Station Transmission Equip.*, 223 F. App'x 600, 601 (9th Cir. 2007); *9613 Madison Ave.*, 218 F.3d at 550; *1083 E. 165th Street*, 2004 WL 2848532, at *5; *2151 Jerome Ave.*, 93 F. Supp. 2d at 418; *United States v. Any and All Radio Equipment Located at 1400 Laurel Ave., Minneapolis, MN*, 976 F. Supp. 1255, 1257 (D. Minn. 1997), *rev'd on other grounds*, 207 F.3d 458 (8th Cir. 2000) ("*1400 Laurel Ave.*").

The analysis conducted by the Court in *1083 E. 165th Street* in particularly instructive.  There, the claimant, a church in the Bronx, challenged the FCC's authority to seize radio broadcast equipment with a prior hearing or notice.  *See 1083 E. 165th Street*, 2004 WL 2848532, at *5.  The Court noted that as other courts had held, when the seizure involves easily moveable property, like radio broadcast and production equipment, "immediate seizure was necessary 'to establish the district court's jurisdiction over the equipment . . . . Therefore, in light of these exigencies due process did not require notice and a hearing before seizure.'"  *Id.* (quoting *9613 Madison Ave.*, 218 F.3d at 550).  Additionally, the Court analyzed whether a pre-seizure hearing was necessary under the standards announced in *Matthews v. Eldridge*, 424 U.S. 319 (1976), and found that each of the factors weighed in favor of the Government's seizure of

14

materials without a hearing.  *Id.*  at *5-6.  The situation here is no different than *1083 E. 165th Street*, and the Court should follow the reasoning found therein.

Mr. Sanchez has no meritorious defense to forfeiture, and as such, summary judgment is warranted.

## CONCLUSION

Based on the foregoing, the Court should grant the Government's Motion for Summary Judgment.


Dated: New York, New York
       February 16, 2015

                                      PREET BHARARA
                                      United States Attorney for the
                                      Southern District of New York

                   By:    /s/*Arastu K. Chaudhury*
                          ARASTU K. CHAUDHURY
                          Assistant United States Attorney
                          86 Chambers Street, 3rd Floor
                          New York, New York 10007
                          Tel:   (212) 637-2633
                          Fax:  (212) 637-2750
                          arastu.chaudhury@usdoj.gov